# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

### CASE NO. _____

In Re Application Of

BAPA Holdings, Corp.

                    Applicant

pursuant to 28 U.S.C. § 1782
For Judicial Assistance in Obtaining
Evidence For Use in a Foreign Proceeding.

## BAPA HOLDINGS, CORP.'S EX PARTE APPLICATION FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

BAPA Holdings, Corp. ("BAPA" or "Applicant") respectfully submits this Application for Judicial Assistance, pursuant to 28 U.S.C. § 1782, in obtaining documentary and testimonial evidence for use in a foreign proceeding ("Application"). In support thereof, Applicant states as follows:

## INTRODUCTION

The facts relevant to this Application are set forth below and in the Declaration of Rodrigo Callejas ("Declaration"), attached as **Exhibit 1**. The facts stated in the Declaration are incorporated herein by reference. BAPA seeks assistance from the United States District Court for the District of Columbia to obtain documentary and testimonial evidence from Neway Capital LLC ("Neway" or "Discovery Target") through service of a discovery subpoena to obtain evidence for use in a proceeding currently pending before the Eighth Civil Court of First Instance in the Republic of Guatemala against Banco Agromercantil de Guatemala, Sociedad Anónima ("BAM"). *Id.* at ¶ 23. BAPA's claims against BAM are for, *inter alia*, breach of contract and for

damages in excess of US$7 million pertaining to the development of "The Cove at Pristine Bay" in Roatan, Honduras (the "Project")[1]. *Id.* at ¶ 30.

## BACKGROUND

### I.    The Relevant Parties and Discovery Target.

1.      Applicant BAPA is a company organized under the laws of the Republic of Panama that invested US$7 million for the development of the Project. *Id.* at ¶ 5.

2.      BAM is a regulated financial institution organized under the laws of the Republic of Guatemala that gave a US$6 million loan for the development of the Project. *Id.* at ¶ 6.

3.      The Discovery Target is a Wyoming limited liability company registered to do business in Washington, D.C., and with both its principal address and mailing address listed as 4301 50th Street NW, Suite 300, PMB 1136, Washington, D.C., 20016. *Id.* at ¶ 7. The address listed on Neway's website is 1875 Connecticut Avenue NW, 10th Floor, Washington, DC 20009. *Ibid.* Upon information described in additional detail below and publicly available information, the Discovery Target is an asset management firm that collaborated with BAM to assist with the sale or assignment of the Project. At other times relevant, Neway was also an interested potential buyer for the Project and is a related party to Inversiones SJ, S.A. de C.V. ("Inversiones SJ"), the eventual assignee of the Project. *Id.*

4.      Honduras Próspera LLC, ("Próspera") is a startup company affiliated of the Discovery Target[2] with a considerable overlap of personnel. Upon information described in

---

[1] This Application incorporates by reference the terms defined in the Declaration.
[2] As described in the Declaration, Neway is part of a network of entities with interconnected interests, including Honduras Próspera Inc. (formerly known as Honduras Próspera LLC), Próspera Foundation, S.A. (formerly North Bay Foundation, S.A.), North Bay GSP LLC, North Bay GSP, Inc., Próspera Insurance Association LLC (both Wyoming and Próspera ZEDE entities), Próspera Insurance Company LLC (both Wyoming and Próspera ZEDE entities), Próspera Arbitration Center LLC, Próspera ZEDE (formerly ZEDE of North Bay), and Próspera Trust. These parties are

additional detail below and publicly available information, multiple individuals sit on the boards of both Neway and Próspera, and the two entities also share the same Chief Executive Officer and General Counsel. *Id.* at ¶ 8.

5.    Broadspan is a financial advisory firm specializing in investment banking and asset management, which BAM hired to assist and promote the sale of the Project.[3] *Id.* at ¶ 20. Through a §1782 Discovery Proceeding out of the Southern District of Florida, BAPA learned of Discovery Target's integral involvement in the final transaction of the Project, of which Discovery Target was a beneficiary. *Id.* at ¶ 24.

6.    North Shore Development Company, S.A. ("NSDC") is a company organized under the laws of the Republic of Honduras ("Honduras"). *Id.* at ¶ 9. NSDC is the developer for the Complex, a touristic and residential project consisting of several phases of residences including the Project, a golf course, a beach club, and other amenities, located in the Bay Islands in the Municipality of Roatan in Honduras. *Id.*

## II.    The Project and BAPA's Investment.

7.    As described in the Declaration, BAPA invested approximately US$7 million in the Project in reliance on representations about the Project that turned out to be false, and it was then left in the dark by BAM when it attempted to recover its investment through a negotiated agreement with BAM. *Id.* at ¶ 13.

8.    In 2014, BAPA began meeting with NSDC about BAPA's potential investment in

---

collectively affiliated with Neway through ownership, control, or contractual relationships. Additionally, Próspera Foundation, S.A. is believed to own stock in Inversiones SJ, S.A. de C.V., the assignee of the Project, further establishing a connection among these entities. *Id.* at ¶ 7, n.2.

[3] The Project consists of a beachfront residential development with approximately 160 housing units and other buildings for potential commercial uses. Ex. 1, at ¶ 4, n.1. The Project is one of many development phases at the Pristine Bay Resort (the "Complex") in Honduras. *Id.*

the Complex. *Id.* at ¶ 10. During those discussions, NSDC represented to BAPA that BAM gave a US$6 million loan for the development of the Project. *Id.* For BAPA, BAM's funding lent credibility to the Project and was a decisive factor in BAPA's ultimate decision to invest. *Id.* The terms of the loan agreement between NSDC and BAM also required that BAPA's investment undergo an approval process with BAM before the investment could be formalized. *Id.* at ¶ 11.

9.      BAM approved BAPA's investment and granted the required authorization for BAPA to invest in the Project. *Id.*

10.      As a result, on July 11, 2014, BAPA and NSDC entered into a joint venture agreement to construct, develop, promote, and sell the Project (the "JV Agreement"). *Id.* at ¶ 12. The JV Agreement includes financial projections, a budget, projected sales, expenses, and other financial details for the Project. *Id.*

11.      The JV Agreement explicitly states that the Project would be developed with the US$7 million capital contributed by BAPA and the US$6 million loan from BAM. *Id.* at ¶ 13. As part of the JV Agreement, NSDC was to contribute property with an estimated value of US$7 million, which property had an existing registered mortgage for US$6 million held by BAM.

12.      In addition to the US$7 million capital contribution, BAPA was to contribute additional funds  for an ancillary agreement regarding the management of the property. *Ibid.* In the JV Agreement, NSDC also guaranteed that its own credits and obligations, whether present or future, would not affect either the development of the Project or BAM's US$6 million loan.[4]

---

[4] Since a non-Honduran entity, such as BAM, cannot own real estate in Roatan, Honduras, BAM would be unable to execute its guarantee in the event of any breach by the debtors. *Id.* at ¶ 19, n.4.

*Id.* at ¶¶ 13-14.

13.     From 2014 to 2015, BAPA made the agreed capital contributions to the joint venture and expected NSDC to develop the Project with said contributions and its credit with BAM. *Id.* at ¶ 15. However, in October 2016, NSDC brought to BAPA's attention its concerns about the solvency and development of the Complex. *Id.* In November 2016, BAPA learned of NSDC's likely default on the BAM loan when BAM requested that BAPA contribute to the payment of interest on said loan. *Id.*

14.     In light of the foregoing, BAPA conducted an investigation of the development and state of the Project, as well as the budget, sales to date, existing contracts with third parties, permits, licenses, available accounts, and other historical records related to the Project and BAPA's investment. *Id.* at ¶16. BAPA's investigation revealed the existence of several irregularities that had existed prior to and since the time of its investment that were previously unknown to BAPA and that BAM knew or should have known. *Id.*

15.     For example, BAPA's investigation revealed that: (1) NSDC's shareholders had personal obligations to BAM with respect to the Project; (2) BAM failed to disclose the  existence of those obligations; and (3) the personal liabilities of NSDC's shareholders increased NSDC's exposure as well as the overall risk associated with BAPA's investment. *Id.* at ¶ 17. BAPA also learned that: (4) the Guatemalan Public Ministry, which is the prosecuting authority in that jurisdiction, placed a lien on the Project such that it cannot be easily transferred;[5]  (5) BAM used the funds invested by BAPA in BAM's accounts for purposes other than the development of the Project, as they applied the payments to NSDC debts without BAPA's consent and contrary to BAM's prior representations at the time of approving BAPA's investment; and (6) based on

---

[5] As of the date of this Application, the lien on the Project is still in place. Ex. 1, at ¶ 17.

physical inspections and review of reports on the status of the Project, serious concerns exist regarding the veracity of the information provided to BAPA, including information relating to the solvency of the Project. *Id*.

16.    In November and December 2016, BAPA requested information from BAM to understand better what was happening with the Project. *Id.* at ¶ 18. In that process, BAPA learned that a BAM executive, who actively participated in the granting of credits to NSDC and in the approval of BAPA's entry into the Project as an investor, withheld relevant and material information from BAPA about the Project's solvency and about NSDC's shareholders' personal liability to BAM for the US$6 million loan, which information was known to BAM prior to BAPA's investment. *Id*. Consequently, BAPA was misled in assessing its investment risk and contributed funds for the Project without the benefit of BAM's full knowledge about the Project's risks and insolvency. *Id*.

17.    In addition to the concealment of relevant information, BAPA learned of other relevant facts and improper acts by BAM related to the Project, including: (1) the existence of conflicts of interest for BAM's representatives and executives; (2) defects in the granting of credits by BAM in Honduras[3] and other legal problems in said jurisdiction; (3) BAM's pre-existing knowledge that the Project and the Complex were insolvent; (4) BAM's failure to comply with the terms of its resolution number C14-CCMA-JUL-07-2014 dated July 7, 2014, to the detriment of BAPA's interests as an investor; and (5) acts carried out by BAM with respect to the funds provided by BAPA, which funds were never invested in the Project, despite the fact that this was the purpose of the investment authorization granted by BAM. *Id.* at ¶ 19.

18.    BAPA reproached BAM for its actions and together BAPA and BAM came to an agreement as to proposed solutions for BAPA's recovery of its investment. *Id.* at ¶ 20. From

2016 through 2021, BAPA and BAM met on multiple occasions and exchanged offers and other communications until they finally reached an agreement on how to proceed to enable recovery of BAPA's investment. *Id*. In 2017, BAPA and BAM agreed to sell the Project, which would entail the following: (1) BAM was to assume any liability resulting from the sale of the Project; (2) BAM was to keep BAPA informed of its efforts to sell the Project and any negotiations and deals stemming therefrom; and (3) once the Project was sold, and after deducting expenses, the sales proceeds were to be distributed between BAM and BAPA. *Id*. The sale process was stalled from 2018 through 2020 when other creditors initiated legal actions against BAM in Honduras. *Id*.

19.    However, in February 2020, BAM informed BAPA that it had hired Broadspan to assist with and promote the sale of the Project, and it provided BAPA with the contact information for Broadspan's representatives. *Id*.

20.    However, in May 2021, after BAPA contacted BAM to obtain information about the status of the sale, BAM confirmed to BAPA that it had sold the credit rights that guaranteed the Complex to a third party and that it could not disclose any additional information due to a confidentiality agreement with the third party. *Id.* at ¶ 21. Through its sale of the credit rights that guaranteed the Complex to a third party, BAM unilaterally deviated from its agreement with BAPA and breached the agreement, causing BAPA further damages that would not have been suffered if BAM had not acted as it did. *Id*. BAPA attempted contact with Broadspan about the matter without success. *Id*.

21.    Following BAM's confirmation in May 2021 that it had sold and assigned the credit rights guaranteeing the Project to a third party, and its refusal to disclose further information citing a confidentiality agreement, BAPA held follow-up meetings with BAM throughout 2021. *Id.* at ¶ 22. Despite BAPA's continued efforts, BAM refused to provide any

substantive information regarding the sale or the status of the Project. *Id*. This lack of transparency prompted BAPA to evaluate its legal options and consider initiating proceedings against BAM in Guatemala. *Id*. To gather the necessary evidence to support its then-contemplated claims, on February 17, 2022, BAPA filed an application for judicial assistance pursuant to 28 U.S.C. § 1782 related to non-party Broadspan (the "Broadspan 1782 Proceeding", S.D. Fla. Case No. 1:22-cv-20504-BB). *Id*. On February 22, 2022, U.S. District Court in and for the Southern District of Florida granted BAPA's application and authorized BAPA to seek discovery from Broadspan. *Id*.

22.    Through the Broadspan 1782 Proceeding, BAPA gained access to documentation that proved instrumental in supporting its claims and advancing the Foreign Proceeding initiated in Guatemala. *Id*. at ¶ 23. On September 14, 2022, BAPA filed a civil complaint against BAM in the Eighth Civil Court of First Instance, alleging breach of contract and seeking damages, supported by evidence obtained through the Broadspan 1782 discovery. *Id*. Although BAM moved to dismiss the Foreign Proceeding on October 14, 2022, the court found its arguments insufficient and denied the motion on January 10, 2023. *Id*. From October 2022 to September 2024, BAPA filed twenty amendments, each grounded in critical evidence from the Broadspan production, uncovering correspondence, agreements, and communications involving BAM, Broadspan, Bancolombia, and other third parties. *Id*. This evidence highlighted internal discussions about the Project's financial structure, requirements for its sale, and coordination among parties regarding registry remnants, real estate transfers, and asset allocations, further strengthening BAPA's case in the Foreign Proceeding. *Id*.

23.    Through the discovery process in the Broadspan 1782 Proceeding, BAPA uncovered critical relationships among BAM, Bancolombia, Neway, Próspera, Mr. Danny

McNab, and Inversiones SJ, all of which were integral to the final transaction involving the Project. *Id.* at ¶ 24. During the deposition of Mr. Juan Rafael Dib representing Broadspan, conducted via Zoom on April 12, 2024, Mr. Dib testified that the mortgage loan and associated rights to the Project were assigned to an entity controlled by Mr. McNab in a joint venture with Neway. *Id.*

24.    Additionally, during the deposition it was discussed the proposed transaction structure that was ultimately executed, showing Inversiones SJ—a special purpose vehicle registered in Honduras—as the acquiring entity. *Id.* at ¶ 25. Mr. Dib confirmed that Inversiones SJ was owned 75% by Mr. McNab and 25% by St. John's Bay Development Company. St. John's Bay Development Company, an affiliate of Honduras Próspera Inc., is a central entity in the development of the St. John's Bay community within the Próspera ZEDE (*Zona de Empleo y Desarrollo Económico*, or special economic interest zone). *Id.* This entity collaborates with Neway, which is actively involved in investing in and developing projects under the ZEDE framework. *Id.* Mr. Dib described Neway's relationship with Próspera, highlighting its efforts to integrate the Complex into the Próspera ZEDE initiative. *Id.* This linkage demonstrated coordinated efforts between McNab and Neway, through Próspera, to position the Complex within the ZEDE framework, aligning it with their broader economic development goals. *Id.*

III.    **The Discovery Sought.**

25.    Consequently, Applicant seeks to obtain relevant and probative documentary and testimonial evidence from Neway for use in the pending civil proceeding against BAM. *See* Ex. 1, at ¶ 26. Specifically, BAPA seeks the following: (1) Documents and information reflecting the terms of the relationship between Neway and BAM, including engagement letters or agreements, contracts for services, and the like, relating to the Complex, Project, and/or sale or assignments

of any of BAM's rights stemming from its connection to the Complex and/or Project; (2) escrow documents created, prepared, maintained, stored, housed, or compiled by Neway, related to BAM and the Complex and/or Project, including data or documents regarding the Complex, BAPA's relationship to the Project and the Complex, and BAM, Danny McNab and Neway's efforts to sell or assign the Complex, Project, or BAM's rights and interests relating to the Complex and/or Project; (3) Documents and information relating to the negotiations between Neway, Próspera, Danny McNab, Inversiones SJ, St. John's Bay Development Company, Bancolombia and/or BAM for the sale or assignment of the Complex, Project, or BAM's rights and interests in the Complex and/or Project, including letters of intent, memoranda of understanding, contracts, agreements, and communications; (4) Documents and information relating to the sale or assignment of the Complex, Project, or BAM's rights and interests in the Complex, including due diligence performed, projections, and closing documents for any such sale or assignment; and (5) Documents and final drafts clarifying the ownership and relationships among Próspera, St. John's Bay Development Company, Danny McNab, including any agreements or communications evidencing their respective roles and interests in the Project and/or Complex. *Id*.

26.    The evidence in the form of testimony and documents sought through this Application are for use in the pending foreign proceeding filed against BAM and assigned to the Eighth Civil Court of First Instance. Ex. 1 ¶ 23. The evidence sought through this Application is crucial for proving BAM's intentions and efforts to sell or assign the Complex and the Project or its interests and rights therein, which is relevant to BAM's breach of the agreement between it and BAPA to facilitate BAPA's recovery of its investment through the sale of the Project. *Id*. at ¶ 27.

27.     Should the Court grant the Application, Applicant proposes to serve a subpoena, in the form attached as **Exhibit 2**, on Neway.

**IV.    The Foreign Proceeding.**

28.     BAM's breach of its agreement with BAPA by failing to provide information about the status of the sale and by selling the credit rights that guaranteed the Complex to a third party have caused significant losses and damages to BAPA. Ex. 1 ¶ 28. As such, BAPA has sought relief from the competent courts of the Republic of Guatemala for the damages caused to it by BAM. *Id.*

29.     BAPA also learned that Neway and Mr. McNab jointly control the entity to which the mortgage loan and associated rights in the Project were assigned. *Id.* at ¶ 24. Neway also collaborated with the acquiring entity in a coordinated effort with Mr. McNab to position the Complex to better align with their broader economic development goals. *Id.* at ¶ 25.

30.     Through various evidence-gathering proceedings in Guatemala and the United States, BAPA has been able to obtain some evidence of BAM's bad faith and violations as to BAPA with respect to the Complex and the Project but the need to gather evidence from Neway remains. *Id.* at ¶ 33.

31.     As demonstrated below, Applicant meets the statutory requirements under 28 U.S.C. § 1782, and the discretionary factors weigh in favor of granting the relief requested in this Application.

## ARGUMENT

**I.    Standard for Granting Relief**

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years,

to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 247 (2004). Section 1782 "provide[s] for assistance in obtaining documentary and other tangible evidence as well as testimony." *Id.* at 248. The statute reads, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made…upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court…. A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a) (2022).

Courts have distilled § 1782's language into a two-part inquiry: (1) whether a district court is *authorized* to grant relief and (2) whether it *should* grant relief in its broad discretion. A district court is authorized to grant relief upon satisfaction of the following statutory requirements: (1) the person from whom discovery is sought resides or is found in the district in which the application is filed; (2) ) the discovery is "for use in a proceeding before a foreign or international tribunal; and (3) the application is made "by a foreign or international tribunal," or by "any interested person."[6] 28 U.S.C. § 1782(a); *see also Lazaridis v. Int'l Centre for Missing & Exploited Children, Inc.,* 760 F. Supp. 2d 109, 112 (D.D.C.2011), *aff'd sub nom. In re*

---

[6] "District courts are generally authorized to review a § 1782 application on an *ex parte* basis." *In re Application of Masters for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 315 F. Supp. 3d 269, 272 (D.D.C. 2018).); *see also In re Clerici*, 481 F.3d 1324 (11th Cir. 2007) (affirming denial of motion to vacate order granting *ex parte* § 1782 application); *In re Eurasian Bank Joint Stock Co.,* No. 3:15-mc-106-L-BN, 2015 WL 6438256, *2 (N.D. Tex. October 21, 2015) ("the Court notes that *ex parte* filing of an application for discovery under 28 U.S.C. § 1782 is permissible."); *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash [a subpoena] pursuant to Federal Rule of Civil Procedure 45(c)(3).") (citing, *inter alia, Brandi-Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 78 (2d Cir. 2012) and *In re Edelman*, 295 F.3d 171, 173-75 (2d Cir. 2002)).

*Application for an Order Pursuant to 28 U.S.C. 1782*, 473 F. Appx. 2 (D.C. Cir. 2012).

Once a court determines that the application satisfies § 1782's statutory requirements, it may exercise its discretion to grant the relief sought. The court's discretion is guided by the discretionary factors recited by the Supreme Court in *Intel*:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach" and therefore their evidence may be "unobtainable absent § 1782(a) aid";
>
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
>
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
>
> (4) whether the § 1782(a) request is "unduly intrusive or burdensome."

*Intel,* 542 U.S. at 264-65.

The court's discretion is further informed by the twin Congressional aims of § 1782, "which are to provide efficient means of assistance to participants in international litigation in our federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts." *In re Veiga*, 746 F. Supp. 2d 8, 17 (D.D.C. 2010) (citing *Euromepa, S.A. v. R. Esmerian, Inc.,* 154 F.3d 24 (2d Cir. 1998)).

As demonstrated below, the Application satisfies § 1782's the statutory requirements and discretionary factors and, therefore, this Court should grant the relief sought in the Application.

## II. The Application Meets the Statutory Requirements for Granting Relief.

### A. The Discovery Target Resides or is Found in This District.

The first statutory requirement is satisfied because the Discovery Target Neway "resides or is found in" the District of Columbia. Neway is registered to do business in Washington, D.C.

and has its principal and mailing addresses at 4301 50th Street NW, Suite 300, PMB 1136, Washington, D.C., 20016. Ex. 1, at ¶ 7. Additionally, the address listed on Neway's website is 1875 Connecticut Avenue NW, 10th Floor, Washington, DC 20009. *Ibid.* Furthermore, Neway's presence in this District may be categorized as systematic and continuous.[7]

### B.    The Discovery Sought is for Use in a Proceeding in a Foreign Tribunal.

The second statutory requirement is also satisfied because the discovery sought through the instant Application is for use in a civil proceeding which has already commenced. *See* Ex. 1, at ¶ 23. The requirement that evidence be sought for use in a foreign proceeding is satisfied because the discovery will be used in the Foreign Proceeding, which seeks damages against BAM and is currently pending before the Eighth Civil Court of First Instance in the Republic of Guatemala. *Id*.

Moreover, BAPA has already expended considerable time and effort in investigating the facts and circumstances to support the Foreign Proceeding in reviewing available documentation related thereto and in requesting and gathering evidence from BAM and BAPA. *Id.* at ¶¶ 31-33.

In the course of such investigation and analysis, for example, BAPA discovered that Neway, its officers, and affiliated companies were all integral to the final transaction involving the Project. *Id*. BAPA also learned that Neway and Mr. McNab jointly control the entity to which the mortgage loan and associated rights in the Project were assigned. *Id.* at ¶ 24. Neway also collaborated with the acquiring entity in a coordinated effort with Mr. McNab to position the Complex to better align with their broader economic development goals. Through various evidence-gathering proceedings in Guatemala and the United States, BAPA has been able to

---

[7] Professor Hans Smit, drafter of § 1782, has commented: "Insofar as the term ["found"] applies to legal rather than natural persons, it may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence." Hans Smit, *American Assistance to Litigation in Foreign and Int'l Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited,* 25 Syracuse J. Int'l L. & Com. 1, 10 (Spring 1998); *see also In re Godfrey,* 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (applying same rationale).

obtain some evidence of BAM's bad faith and violations as to BAPA with respect to the Complex and the Project Notwithstanding, BAPA's need to gather additional evidence from Neway remains. *Id.* at ¶ 33. As such, the Foreign Proceeding satisfies the second mandatory requirement of § 1782(a).

## C.   <u>Applicant is an Interested Person.</u>

A person who has "participation rights" and "possesses a reasonable interest in obtaining judicial assistance… qualifies as an interested person within any fair construction of that term." *Intel*, 542 U.S. at 256-7 (2d Cir. 2004) (internal citations omitted). "The legislative history to § 1782 makes plain that 'interested person' includes a party to the foreign litigation." *See Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) (internal citations omitted). Here, BAPA is an "interested person" in its capacity as the plaintiff and litigant in the pending proceeding and victim of BAM's conduct. *See* Ex. 1, at ¶ 34. Therefore, BAPA meets the third statutory requirement under 28 U.S.C. § 1782(a).

## III.   <u>This Court Should Exercise its Discretion in Favor of Granting Relief.</u>

As noted above, once the Court determines that an application meets § 1782's mandatory requirements for relief, the Court is free to exercise its discretion to allow the discovery sought. Here, this Court should exercise its discretion in favor of granting relief because all of the *Intel* factors have been satisfied.

First, there is no expectation that Neway will be a party to the Foreign Proceeding, or any other proceeding within BAPA's contemplation. *Id.* at ¶ 36. Absent the instant Application, the evidence would almost certainly remain outside the reach of the Guatemalan courts. *Id.* Second, counsel retained in the Foreign Proceeding has advised that there is no indication that the Guatemalan courts would not be receptive to the documentary and testimonial evidence

sought through the instant Application. *Id.* at ¶ 37; *see also In re Eurasian Bank Joint Stock Co.*, No. 3:15-mc-106-L-BN, 2015 WL 6438256, *3 (N.D. Tex. October 21, 2015) ("In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, which Eurasian's local counsel has represented to the Court that he has been unable to find, the Court determines that the second factor does not weigh against an exercise of discretion in Eurasian's favor."). Indeed, Guatemalan courts have already admitted evidence obtained pursuant to § 1782 in the Foreign Proceeding. Ex. 1, at ¶ 31.

Third, Guatemalan counsel retained in the Foreign Proceeding has advised that the evidence sought through the instant Application would likely be admissible in the contemplated foreign proceeding and does not otherwise circumvent any proof-gathering restrictions in Guatemala. *Id.* at ¶ 37. Indeed, related evidence from 1782 proceedings has already been accepted by the foreign court. *Ibid.*

Finally, this Application is not unduly intrusive or burdensome as BAPA proposes to serve Neway with the sample subpoena attached as **Exhibit 2** for this Court's review. Moreover, BAPA seeks the type of evidence produced in the normal course of litigation. Applicant is also limiting the relevant period of inquiry from January 1, 2019, through the present date. *See* Ex. 2.

As such, each of the *Intel* factors weighs in favor of this Court exercising its discretion to grant the Application.

WHEREFORE, Applicant respectfully request this Court enter an Order, in the proposed, or substantially similar, form attached hereto as **Exhibit 3**:

(a)    exercising its discretion, pursuant to 28 U.S.C. § 1782, and granting this Application for judicial assistance;

(b)    granting Applicant leave to conduct discovery pursuant to the Federal Rules of Civil Procedure, including, but not limited to, leave to serve the

subpoena, in substantially the same form as the sample subpoena attached as Exhibit 2 to this Application;

(c)     reserving jurisdiction to grant Applicant leave to serve follow-up subpoenas on any other person or entity as may be necessary to obtain the evidence described in the Application; and

(d)     granting any other relief this Court deems just and proper.

Dated:  February 27, 2025.                         Respectfully submitted,

                                                   SEQUOR LAW, P.A.
                                                   1111 Brickell Avenue,
                                                   Suite 1250
                                                   Miami, Florida 33131
                                                   Telephone: 305-372-8282
                                                   Facsimile: 305-372-8202

                                      By:     /s/ *Tara J. Plochocki*
                                                   Tara J. Plochocki (DC Bar No. 989404)
                                                   650 Massachusetts Avenue, N.W.,
                                                   Suite 600
                                                   Washington, D.C., 20001
                                                   Tel: (305) 372-8282
                                                   tplochocki@sequorlaw.com

                                                   *Counsel for Applicant BAPA Holdings, Co*

-17-