UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF BAPA HOLDINGS, CORP., PURSUANT TO 28 U.S.C. § 1782 FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FOR USE IN A FOREIGN PROCEEDING | Misc. Action No. 25-00026 (AHA) |

**Memorandum Opinion and Order**

On May 21, 2025, this court granted BAPA Holdings, Corp.'s application for discovery from NeWay Capital LLC for use in a foreign proceeding under 28 U.S.C. § 1782. ECF No. 3. NeWay filed a motion to vacate the court's order and to quash the subpoena and, after full briefing by both parties, the court denied the motion. ECF No. 12. NeWay now moves for a stay pending appeal. ECF No. 15. After reviewing NeWay's motion, the court finds it is premised largely on misconstruing the proceedings before this court, including NeWay's own deficient and "hide the ball" approach to litigating personal jurisdiction, which led the court to discount its representations and evidence. Because NeWay has not satisfied the showing required for a stay pending appeal, the court denies that motion.

**I.   Background**

In February 2025, BAPA filed an *ex parte* application under 28 U.S.C. § 1782, to obtain discovery from NeWay for use in a foreign proceeding. ECF No. 1. The court ordered BAPA to show cause why the application should proceed *ex parte*. Minute Order (Apr. 2, 2025). The court accepted BAPA's showing, which included the expectation that any issues related to the subpoena could be raised in a motion to quash, should NeWay choose to file one. *See* ECF No. 2 at 2. The court authorized BAPA to serve its proposed subpoena on NeWay, relying on BAPA's evidence

that Neway's principal location was D.C., as indicated on NeWay's website and in official records. ECF No. 3 at 1; *see* ECF No. 1-2 ¶ 7.

After being served with the subpoena, NeWay moved to vacate the court's order granting the discovery. ECF No. 5. NeWay challenged whether BAPA's discovery application should have been granted, arguing that considering BAPA's request *ex parte* violated due process and that BAPA failed to satisfy the statutory prerequisites for discovery. *Id.* at 3–6. NeWay also included a perfunctory, two-paragraph argument about personal jurisdiction, in which it cited only the improper "substantial, continuous or systematic connection" test for general jurisdiction. *Id.* at 4; *see Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014) (rejecting formulation of the test allowing for "the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business'").

In its motion, NeWay contested that it was subject to jurisdiction in D.C., characterizing the Washington, D.C. office that it identifies as its headquarters publicly and in official documents as a "virtual office" and asserting that NeWay "has not designated Washington, D.C. for general jurisdiction purposes." ECF No. 5 at 2. NeWay's motion represented that "[n]o records are kept" in D.C. and "[n]o personnel, management, or board members of NeWay physically reside or otherwise regularly do business" in D.C. *Id.* NeWay did not clearly identify any jurisdiction where it could be subject to personal jurisdiction, attaching an affidavit from its counsel stating it is "a distributed, remote-work company." ECF No. 5-1 ¶ 2. NeWay asserted that "[t]o the extent it has a physical operational location" at all, it is in Mississippi, where a board member and a chief of staff live. *Id.* ¶ 3. NeWay's motion did not explain why it had selected the residence of that board member and employee yet omitted any information about where other employees, including its C-suite executives, worked from and did not include the details of any actual management or

2

operations in Mississippi. The affidavit offered the obscure statement that "space is licensed for annual board meetings to occur" in Mississippi "if and to the extent they are physical meetings and not organized elsewhere." *Id.*

In response, BAPA argued that NeWay "resides" or can be "found" within D.C. as required under § 1782, recognizing that the standard is at least coextensive with the typical due process test for personal jurisdiction. ECF No. 7 at 5–10. BAPA also included evidence that undermined the credibility of NeWay's representations and evidence. This included:

1. NeWay's public company profiles identify its "Headquarters" as Washington, D.C. and provide a Washington, D.C. address. ECF No. 7-2 ¶¶ 4, 6.

2. NeWay's motion omitted information about several of its executives, who had public profiles indicating they are operating out of D.C., from its motion and affidavit, in favor of selectively identifying the common location of one board member and chief of staff, neither of whom were identified as part of the company's executive team. In particular:

    a. NeWay's website identified six members of its executive team. *See* ECF No. 7-5. Neither the board member or chief of staff that NeWay described in its motion or affidavit were identified as part of the executive team. *See id.*

    b. NeWay's CEO and chairman, listed as part of the executive team, had a public profile that identified the "Washington, D.C. metro area" as his location as it relates to NeWay. ECF No. 7-7.

    c. The person listed as NeWay's COO on the website maintained a public profile indicating he was operating out of Washington, D.C. until May 2021. ECF No. 7-8.

    d. Another executive team member, identified as an officer and advisory board member, also had a public profile identifying his current location as Washington, D.C. The profile also identified him as having served as NeWay's "Executive Director." ECF No. 7-9.

3. NeWay's website identifies Washington, D.C. as its sole location, providing a D.C. address and phone number. ECF No. 7-2 ¶ 4; ECF No. 7-4.

4. Contemporaneous records support that NeWay's principal place of business is Washington, D.C., not Mississippi:

    a. NeWay's Annual Reports from 2018 to 2025 signed by NeWay officers, including NeWay's affiant, specified Washington, D.C. as NeWay's "principal office." ECF No. 7-2 ¶¶ 18–21; ECF Nos. 7-17, 7-18, 7-19.

    b. SEC forms signed by NeWay's CEO placed him at NeWay's Washington D.C. address and identified Washington, D.C. as NeWay's "principal place of business." ECF No. 7-2 ¶¶ 14–17; ECF Nos. 7-14, 7-15, 7-16

5. A property record indicates that the Mississippi address NeWay provided in its motion was a residential home owned by one of the company's board members and that board member's spouse. ECF No. 7-2 ¶¶ 5, 13; ECF No. 7-13.

In its reply brief, NeWay cited for the first time the applicable legal standard for general jurisdiction and attempted to introduce new evidence that it chose to omit from its original motion. But NeWay continued to omit obviously relevant information, in favor of obscure representations. For example, after BAPA indicated NeWay's CEO operates from Washington, D.C., NeWay submitted a cursory affidavit from the CEO identifying Maryland as his U.S. place of residence, consistent with him working in D.C. ECF No. 8-5 ¶ 2. The affidavit stated the CEO spends "a

significant portion" of time traveling internationally and does not "continuously" work from D.C. but did not identify any place of work in the U.S. other than D.C. *Id.* ¶¶ 2–3. Similarly, after NeWay omitted any mention of someone who worked as its "Executive Director" and had a public profile identifying D.C. as his place of work, NeWay offered a similar cursory affidavit that confirmed he also lives in Maryland and provided only vague representations that he does not "continuously" do business in D.C for NeWay. ECF No. 8-4 ¶¶ 2–3. In other words, NeWay's best effort to rebut BAPA's evidence tying NeWay to D.C. relied on where the omitted executive team members lived (which did not rebut, and was consistent with, NeWay having its principal place of business in D.C.) and identified D.C. as the only U.S. location where they did work. NeWay's evidence accordingly did not rebut BAPA's showing that these executives work for NeWay in Washington, D.C.

NeWay's reply also attempted to rebut BAPA's evidence by disclaiming the information on its own website as "outdated" and "inaccurate." ECF No. 8-1 ¶ 3. According to NeWay, the person identified on the website as its COO in Washington, D.C. had ceased working for NeWay in 2021. *Id.* However, NeWay did not dispute that the COO was another executive who had worked from D.C. during his tenure. *See id.* ¶ 5. That is, NeWay's reply did not meaningfully dispute that until recently NeWay's executive team included three members conducting their U.S.-based work for the company from D.C.—with no indication that any of those three individuals conducted their business for NeWay from Mississippi—and continued to have two such members conducting their work from D.C. *See id.* NeWay also did not address the fact that neither of the two people it had identified as residing in Mississippi had been identified as members of the executive team. *See* ECF No. 7-5; ECF No. 8-1. Indeed, the affidavit of the chief of staff suggested otherwise. *See* ECF

5

No. 8-2 ¶¶ 1, 3 (chief of staff describing role as "coordinating between executives and board members" and traveling to Washington D.C. to support work on request).

NeWay's new evidence on reply also undermined the credibility of its earlier submissions. For example, in its initial motion NeWay argued that it is not subject to personal jurisdiction in D.C. on the representation that "[n]o records are kept in Washington." ECF No. 5 at 2. But in reply, the affidavit of an operations manager clarified that "[a]ll business records are kept digitally"—context which renders the point neutral, at best, and would not favor jurisdiction in any particular place. ECF No. 8-1 ¶ 5. The affidavit then stated that to the extent company records are stored in any physical location temporarily, they are stored in D.C. *Id.* ¶¶ 5, 7. The operations manager further identified D.C. as "the only central physical point of contact for business communications with the entire executive team." *Id.* ¶ 7.

NeWay's new evidence on reply also did not provide any credible support for NeWay's argument that its principal place of business is in Mississippi. For example, NeWay's reply did not address why its principal place of business should be determined based on the location of the one board member and employee it selected, rather than the place where its executive team members, including its CEO, conduct business for the company (with no evidence that any executive team members conduct work in Mississippi). NeWay did not address why it had consistently identified Washington, D.C., not Mississippi, as its headquarters publicly and as its principal place of business in its annual reports and SEC filings. Indeed, Neway did not provide a single record indicating it did any actual business in Mississippi. And NeWay did not rebut BAPA's showing that the Mississippi address NeWay had offered was simply the residence of a single board member and his wife. *See* ECF No. 8-3 ¶ 4. NeWay instead continued to make the obscure representation that "board meetings are licensed to occur" in Mississippi—a statement that has little to no actual

6

meaning (for instance, leaving out whether any board meeting has ever actually occurred at the residence and reserving the possibility that board meetings have all occurred elsewhere). ECF No. 8 at 4. Indeed, the NeWay board member who has "licensed a portion of" his home for "annual meetings," explained that "all annual meetings have been conducted virtually to date," confirming that no annual meetings have actually occurred in Mississippi. ECF No. 8-3 ¶ 4.

Following NeWay's reply, BAPA challenged NeWay's late evidence on reply and sought leave to file a sur-reply to the extent the court considered the new evidence. ECF No. 9. The court found it unnecessary to decide whether NeWay's new evidence was properly before the court because, even considering it, NeWay's principal place of business was D.C., not Mississippi. The court denied NeWay's motion to vacate and to quash the subpoena. ECF No. 12. The court observed that § 1782's inquiry into where a party "resides or is found" is generally understood as at least coextensive with the usual due process analysis and accordingly includes the general jurisdiction inquiry into "where the defendant is 'essentially at home.'" *Id.* at 2 (citation omitted). Applying that standard, the court concluded that NeWay's evidence could not overcome BAPA's "far more substantial showing" that NeWay is "at home" in D.C. *Id.* at 3. The court also rejected NeWay's argument that the subpoena was overbroad, noting that any such issues could be addressed through routine discovery processes. *Id.* at 5 n.2. NeWay now seeks a stay pending appeal.

**II.     Discussion**

"A stay pending appeal is an 'extraordinary' remedy." *KalshiEX LLC v. Commodity Futures Trading Comm'n*, 119 F.4th 58, 63 (D.C. Cir. 2024) (quoting *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam)). In determining whether to grant a stay pending appeal, the court considers (1) whether NeWay has made a strong showing that it will likely succeed on the merits of its appeal; (2) whether NeWay

7

will suffer irreparable harm absent a stay; (3) whether a stay will substantially injure other parties; and (4) whether a stay is in the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors are "the most critical." *Id*. Here, none of the factors favor a stay.

### A. NeWay Is Not Likely To Succeed

NeWay has not shown a likelihood of success on the merits. NeWay claims its appeal raises "fundamental questions" about the court's jurisdiction—namely, "whether this Court applied the correct legal standard in concluding it has personal jurisdiction over NeWay." ECF No. 15 at 1, 3. But that is premised on misconstruing the court's opinion, not on any actual disagreement about or error in the correct standard. NeWay's appeal instead contests application of the legal standard for general jurisdiction to the particular record in this case, relying on evidence that this court gave little weight to because of its evasion and dubious credibility (to the extent the evidence was properly before the court at all).

According to NeWay, the court failed to apply the correct legal standard for general personal jurisdiction, which asks where NeWay is "essentially at home," and paradigmatically includes its "state of incorporation" and "principal place of business." ECF No. 15 at 3 (quoting *Daimler*, 571 U.S. at 127). That argument is not likely to succeed for many reasons.

First, that's the test this court applied. *See* ECF No. 12 at 2–3. The court explained that § 1782's inquiry into where a party "resides or is found" is generally understood as at least coextensive with the usual due process analysis. *Id*. at 2 (citing *In re del Valle Ruiz*, 939 F.3d 520, 528 (2nd Cir. 2019)). The court explained that this includes the general jurisdiction inquiry into "where the defendant is 'essentially at home'" and, accordingly, generally includes the "district where it is headquartered or incorporated." *Id*. at 2–3 (citations omitted). The court considered numerous factors and credited evidence supporting the conclusion that NeWay is "at home" in

D.C., including the substantial, contemporaneous evidence that NeWay itself understood its headquarters to be in D.C. *Cf. Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010) (recognizing in the context of diversity jurisdiction that "in practice" a company's principal place of business "should normally be the place where the corporation maintains its headquarters"). This included BAPA's evidence regarding NeWay's own website, its executive team's locations and public profiles, and NeWay's annual reports and SEC filings which had for several years identified D.C. as its principal place of business. ECF No. 12 at 3. The court also reached this conclusion based on NeWay's failure to offer any credible evidence of an alternative principal place of business. *See id.* (concluding that NeWay's evidence that its "chief of staff and one board member apparently live" in Mississippi failed to outweigh BAPA's "far more substantial" evidence that even NeWay has consistently viewed itself "as an organization headquartered in D.C."). As set forth above, even assuming NeWay's reply evidence could be properly considered, it continued to omit obviously relevant evidence and did not rebut BAPA's evidence that the CEO, another executive team member, and, until recently, a second C-suite executive performed their U.S.-based work from D.C. NeWay simply continued to advance Mississippi as its sole alternative, based on the location of two people who were not on the executive team and the obscure representation that "board meetings are licensed to occur" there. ECF No. 8 at 4; ECF Nos. 8-2, 8-3.

Second, NeWay's likelihood of success is also complicated by its litigation conduct, which included filing a deficient motion and proceeding in a manner that essentially sandbagged the plaintiffs. As noted, NeWay's motion failed to cite the proper legal standard for general jurisdiction or provide any relevant legal analysis. The motion offered only a cursory assertion that it had "not designated Washington, D.C. for general jurisdiction purposes" with an affidavit that lacked facial credibility (for example, advancing the location of NeWay's chief of staff and one

board member while omitting any details about where NeWay's executive team members work) and that relied on obscured legalese (for example, indicating that "space is licensed for annual board meetings to occur" in Mississippi "if and to the extent they are physical meetings and not organized elsewhere"). ECF No. 5 at 2; ECF No. 5-1 ¶ 3. This court therefore applied the correct legal standard *despite* NeWay's deficient motion. Only in reply did NeWay first address the "essentially at home" test and attempt to submit numerous affidavits bearing on that inquiry. Thus, even setting aside this court's conclusion that NeWay's evidence deserved little weight and failed to credibly rebut BAPA's showing, NeWay would have to overcome potential forfeiture of the relevant issues given its cursory, underdeveloped argument and its bait-and-switch approach. *See Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp. 3d 112, 126 (D.D.C. 2015) (explaining that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority" are deemed waived); *In re Sealed Case*, 77 F.4th 815, 829 (D.C. Cir. 2023) ("It is well established that an argument first presented in a reply brief before the district court is forfeited."); *N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) (explaining that "in order to prevent the 'sandbagging' of another party, 'we have generally held that issues not raised until the reply brief are waived'" (citation omitted)); *Twin Rivers Paper Co. LLC v. Sec. & Exch. Comm'n*, 934 F.3d 607, 615 (D.C. Cir. 2019) (explaining that "an argument is forfeited if the petitioners 'were obscure on the issue in their opening brief and only warmed to the issue in their reply brief'" (citation omitted)). And if NeWay could overcome the consequences of its deficient briefing and litigation conduct, this court would then have to address the issue it reserved as to whether NeWay's reply evidence was properly before the court in the first place. *See* ECF No. 9; *McAllister v. District of Columbia*, 689 F. App'x 646, 646–47 (D.C. Cir. 2017) (recognizing that it is within a district court's discretion to decline to consider evidence "submitted

for the first time" on reply); *Zynovieva v. U.S. Dep't of State*, No. 19-cv-3445, 2021 WL 3472628, at *2 (D.D.C. Aug. 5, 2021) ("Generally, evidence submitted in reply comes too late.").[1]

Third, the new arguments NeWay offers in its motion for a stay are themselves unsound. NeWay premises its motion for a stay on *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), in which the Supreme Court adopted a "nerve center" test to determine a corporation's domicile for the purpose of diversity jurisdiction. It should be telling that NeWay did not cite *Hertz* in any of its previous briefing before this court. Even in its motion for a stay, NeWay does not acknowledge or offer any analysis regarding the distinction between diversity jurisdiction and personal jurisdiction. *See Morinville v. US Inventor, Inc.*, No. 24-cv-3422, 2025 WL 370983, at *3 (D.D.C. Feb. 3, 2025) (explaining that "both the legal test for personal jurisdiction and the concerns underlying personal jurisdiction are distinct from the test and concerns when it comes to subject matter jurisdiction and determining principal place of business"). And, in any event, NeWay's "nerve center" would plainly be D.C.—where the members of its executive team perform work and NeWay itself has understood its headquarters to be—and not in Mississippi—where there does not appear to be any actual control or direction. *See Hertz*, 559 U.S. at 92–93 (2010) (explaining that "principal place of business" is "best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities," which "should normally be the place where the

---

[1]   NeWay has never requested an evidentiary hearing and has forfeited any such request. In any event, the court would have concluded that NeWay had not made a sufficient showing to warrant an evidentiary hearing. *See World Wide Travel Inc. v. Travelmate US, Inc.*, 6 F. Supp. 3d 1, 5 (D.D.C. 2013), *on reconsideration*, No. 13-cv-1333, 2014 WL 12526712 (D.D.C. Jan. 7, 2014) (explaining that when "personal jurisdiction is challenged, 'the district judge has considerable procedural leeway in choosing a methodology for deciding the motion,'" and the court "may rest on the allegations in the pleadings, collect affidavits and other evidence, or even hold a hearing" (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (3d ed. 2004))). Although NeWay requested oral argument, the court concluded that it would not aid in resolution of the legal issues in this case.

corporation maintains its headquarters"); *see also Daimler*, 571 U.S. at 137 (citing *Hertz* with approval in relation to discussion of "principal place of business" as a paradigm basis for general jurisdiction).

Indeed, NeWay's argument distorts *Hertz* and engages in the very the type of manipulation the Supreme Court eschewed in that case. In *Hertz*, the Supreme Court recognized the possibility that a party would engage in "jurisdictional manipulation," by misdirecting the court as to its actual place of business through "the mere filing" of annual reports or SEC filings with a different location, or through "a mail drop box, a bare office with a computer, or the location of an annual executive retreat." 559 U.S. at 97. That is what NeWay attempts to do here: divert the court from considering the location where members of the executive team conduct their business and that company officers have consistently understood as its headquarters publicly and in official records, by providing conclusory affidavits asserting that "Washington, DC is not the 'nerve center' for NeWay Capital LLC's operations." ECF No. 8-2 ¶ 3; ECF No. 8-3 ¶ 3; ECF No. 8-4 ¶ 4; ECF No. 8-5 ¶ 4; ECF No. 8-7 ¶ 3. NeWay argues its "nerve center" is in Mississippi based on the location of two people who are not on its executive team and the obscure assertion that "space is licensed for annual board meetings to occur" there "if and to the extent they are physical meetings and not organized elsewhere." ECF No. 5-1 ¶ 3. The Supreme Court predicted this very example of manipulation, warning that a company's nerve center is "not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)" and is, instead, the "actual center of direction, control, and coordination." *Hertz*, 559 U.S. at 93.[2]

---

[2] NeWay misleadingly suggests that the Supreme Court prohibited giving weight to the place that executives have consistently identified as a company's headquarters and principal place of

### B.     NeWay Has Not Shown Irreparable Harm

NeWay has not shown irreparable harm. This case involves the granting of a routine discovery order under § 1782, under the routine process for doing so. *See In re Qatar Nat'l Bank*, No. 24-mc-35, 2025 WL 445188, at *2 (D.D.C. Feb. 10, 2025), *aff'd sub nom. Qatar Nat'l Bank v. Perles L. Firm, P.C.*, No. 25-7029, 2025 WL 2945746 (D.C. Cir. Oct. 17, 2025) (explaining that courts "routinely rely on" the *Intel* factors "in evaluating requests under Section 1782"); *In re Masters*, 315 F. Supp. 3d 269, 272 (D.D.C. 2018) (explaining that "district courts are generally authorized to review a § 1782 application on an *ex parte* basis"); *Gushlak v. Gushlak*, 486 Fed. App'x 215, 217 (2d Cir. 2012) (explaining that "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*").

NeWay asserts that it "faces compelled disclosure of confidential business information and potentially trade secrets that cannot be 'undisclosed'" and highlights that it is a "non-party" to the underlying proceeding. ECF No. 15 at 6–7. That could, of course, be said about any § 1782 discovery order and, indeed, any routine third-party discovery in district courts. *See In re Noguer*, No. 18-mc-498, 2019 WL 1034190, at *4 (S.D.N.Y. Mar. 5, 2019) (explaining that the "mere fact that information, once disclosed, cannot be 'undisclosed'" is "true in most, if not all, Section 1782 cases (not to mention ordinary discovery orders)" and "is therefore not enough by itself to warrant a finding of irreparable harm"). Moreover, the protection of confidential business information or

---

business in official documents—here, in years of annual reports and SEC filings. ECF No. 15 at 3–5. That is not correct. The Supreme Court cautioned that a party may not use such filings to manipulate its principal place of business. *See Hertz*, 559 U.S. at 97. It has never suggested that contemporaneous, official records of the location company officers identified as their headquarters and principal place of business are not relevant in confirming a company's principal place of business. Indeed, it is *because* such records are regularly considered that courts must be mindful of manipulation. Here, that executive team members identified D.C. as the company's headquarters and principal place of business, consistent with the actual location of control, is properly considered.

trade secrets is routinely addressed in discovery, including through an appropriate protective order. And, as the court explained, any concern about the subpoena being too "extensive" is also germane to discovery disputes. *See* ECF No. 12 at 5 n.2. Such disputes should be narrowed by the parties themselves and, to the extent needed, by this court, and are not something for NeWay to bring to a court of appeals in the first instance. NeWay gives no reason for departing from routine procedures here. *Id.*[3]

### C.   BAPA Has Shown Substantial Injury

The court also finds BAPA would be substantially injured by a stay in this context. Aside from its misguided personal jurisdiction arguments, NeWay does not meaningfully contest BAPA has satisfied the statutory prerequisites under § 1782. *See* ECF No. 15 at 6 (offering only a cursory assertion that BAPA has not satisfied the *Intel* factors without any supporting authority). However, BAPA has submitted a declaration explaining that if a stay issues, there is serious risk it will lose the opportunity to make use of the evidence it is entitled to "for use" in the Guatemalan proceeding. 28 U.S.C. § 1782; *see* ECF No. 17 at 14; ECF No. 17-1 ¶¶ 12–16; *see also HRC-Hainan Holding Co., LLC v. Yihan Hu*, No. 19-mc-80277, 2020 WL 1274877, at *6 (N.D. Cal. Mar. 17, 2020) (observing that "[a]pplicants *will* be substantially injured by a stay, as they would almost surely not be able to benefit from the documents or information they have obtained, discovery which the Court has determined is relevant to the two foreign proceedings"); *In re Noguer*, 2019 WL 1034190, at *5 (holding that substantial injury may occur where the applicants "may lose altogether any chance to use the materials they seek in the [foreign] appellate proceedings").

---

[3]   NeWay has not yet sought any protective order. BAPA has represented it "would not oppose a reasonable protective order or confidentiality agreement" and, "indeed, has reached out to counsel for NeWay on this exact topic." ECF No. 17 at 12.

### D. The Public Interest Does Not Favor A Stay

The public interest does not favor a stay; rather, a stay would frustrate the dual purposes of § 1782: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004); *see also In re Application of Hornbeam Corp.*, No. 14-mc-424, 2017 WL 2241522, at *2 (S.D.N.Y. May 22, 2017) (finding the public interest favored denying a stay of the use of records produced pursuant to § 1782 because such discovery serves "the public interests in justice, fair play, and full disclosure, as well as the truth in foreign actions" (cleaned up)); *HRC-Hainan Holding Co., LLC*, 2020 WL 1274877, at *6 (holding that the public interest was served by allowing § 1782 discovery "to proceed" because "[d]oing so might aid the [foreign] tribunal in better understanding the truth of the matter and thus better enable it to render an informed and fair decision").

NeWay argues the public interest is on its side because BAPA "weaponized" § 1782 by using "*ex parte* procedures" to "withhold jurisdictional evidence from the original application and deploy it only after the respondent objects." ECF No. 18 at 13. That characterization of the record is inaccurate. BAPA sought and obtained a discovery order under § 1782 through the routine procedure for doing so. While that procedure began *ex parte*, as it often does, the court afforded NeWay a full opportunity to contest the application of § 1782 through a motion to vacate and quash the subpoena. In those proceedings, it is NeWay that has litigated the case in a manner that is less than inspiring. As noted, NeWay does not meaningfully contest that BAPA has shown it seeks discovery "for use" in a foreign proceeding and, to the extent NeWay takes issue with having to produce records for that purpose, its grievance is with Congress. 28 U.S.C. § 1782.

## III. Conclusion

For these reasons, the court denies NeWay's motion to stay proceedings pending appeal, ECF No. 15.

_____
AMIR H. ALI
United States District Judge

Date:   January 15, 2026